UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-11053-RGS

MAUREEN ANDREWS and LEONARD SMALL,
individually and on behalf of all others similarly situated

v.

FIRST STUDENT, INC.

MEMORANDUM AND ORDER
ON DEFENDANT'S MOTION TO DISMISS

August 26, 2011

STEARNS, D.J.

Plaintiffs Maureen Andrews and Leonard Small are former school bus drivers for defendant First Student, a school bus company that provides pupil transportation services to a number of Massachusetts communities. As putative class representatives, plaintiffs allege that certain of First Student's municipal contracts failed to incorporate prevailing wage rates in violation of Mass. Gen. Laws ch. 71, § 7A. As a result, plaintiffs contend that First Student underpaid bus drivers during some years as a result of a "deliberate and intentional failure to ensure that the municipalities and school districts [that First Student] contracted with requested updated prevailing wage rate schedules for the option years." Pls.' Opp'n Mem. at 2. In their Second Amended Complaint, plaintiffs assert claims for: violations of the Prevailing Wage Statute (PWS)

(Count I); failure to pay correct wages on a weekly or bi-weekly basis in violation of Mass. Gen. Laws ch. 149, § 148 (Count II); failure to pay correct overtime wages in violation of Mass. Gen. Laws ch. 151, § 1A (Count III); breach of fiduciary duty (Count IV); and breach of contract (Count V). Plaintiffs also bring equitable claims of unjust enrichment (Count VI), and for an accounting (Count VII). On January 14, 2011, First Student filed this motion to dismiss. A hearing on the motion was held on March 30, 2011. For the reasons to be stated, First Student's motion to dismiss will be allowed in substantial part, but denied with respect to the claim of unjust enrichment.

BACKGROUND

The facts taken in the light most favorable to plaintiffs as the non-moving parties are as follows. Andrews was employed by First Student as a school bus driver in the Masconomet Regional School District (MASCO) from the 2005-2006 school year through the end of the 2009-2010 school year. Small drove a school bus in Peabody, Massachusetts, from 2001 through the end of the 2009-2010 school year. The transportation contracts at issue involved an initial fixed term with an option to renew for one or more subsequent years, at the discretion of the municipality.

Under the PWS, any private employer that contracts with a Massachusetts municipality (with a population of at least 16,000) to provide school bus transportation

2

services must pay employees the "prevailing wage" determined by the Commissioner of the Massachusetts Department of Labor and Workforce Development's Division of Occupational Safety (DOS).  On September 21, 2004, MASCO requested from DOS a schedule of the prevailing wage rates for an about-to-be-bid five-year contract.  On September 28, 2004, DOS provided a schedule mandating a minimum wage of $19.38 per hour until July 1, 2006, and $19.63 per hour thereafter.  The contract MASCO then entered with First Student specified a fixed term of three years and reserved MASCO the option of extending the contract for the 2008-2009 and 2009-2010 school years.  The DOS wage schedule was included in the bid materials and integrated into the final contract.  At the end of the fixed term, MASCO exercised the option for both years.  However, it did not request a new prevailing wage rate schedule from DOS, nor did DOS issue one.

In 2006, Peabody made a similar five-year wage rate request to DOS for an about-to-be-negotiated five-year contract.  On January 12, 2006, DOS provided a prevailing wage schedule mandating a minimum wage for school bus drivers of $20.68 per hour beginning September 1, 2006, and $21.04 from July 1, 2007, to the termination of the contract.  The schedule was included in the bid materials and integrated into the contract that was awarded to First Student in March of 2006.  Like the MASCO contract, the Peabody contract had an initial fixed term of three years with two one-year

options to renew for the 2009-2010 and the 2010-2011 school years. Peabody ultimately exercised only the 2009-2010 school year option. Peabody also did not request a revised prevailing wage rate schedule from DOS when it exercised the option, nor did DOS issue one.

On February 26, 2008, First Student was awarded the school bus transportation contract for the Town of Danvers, which consisted of a one-year term (2008-2009), with an option to extend for the 2009-2010 and the 2010-2011 school years. Danvers requested a prevailing wage schedule from DOS. The schedule mandated a minimum rate of $21.68 per hour from September 7, 2008, until the end of the contract. First Student school bus driver David Manzi asked First Student if there would be a raise in the hourly wage during the 2009-2010 school year, but was told no. Sec. Am. Compl. ¶¶ 32-33. Manzi complained to the Massachusetts Attorney General's Office, DOS, and the Massachusetts Office of the Inspector General (OIG). *Id.* ¶ 34. In response, OIG contacted Danvers officials to inform them that they were required to request an updated prevailing wage rate schedule from DOS. *Id.* ¶ 35. Danvers complied, and on August 4, 2009, DOS issued a prevailing wage rate schedule that mandated hourly rates of $22.30 per hour from July 1, 2009, to June 30, 2010, and $23.00 per hour from July 1, 2010, to June 30, 2011.

Although informed of the wage rate revisions, First Student continued to pay its

Danvers drivers at the old rate for the first two or three weeks of the 2009-2010 school year. Manzi complained to a First Student Region Operations Manager, who immediately directed First Student to make retroactive payments to reimburse the Danvers drivers for any loss of wages.[1]

DISCUSSION

In opposing First Student's motion to dismiss, plaintiffs submitted additional material and affidavits and asked the court to convert the motion to one for summary judgment. *See Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008), citing Fed. R. Civ. P. 12(d); *Garita Hotel Ltd. P'shp. v. Ponce Fed. Bank, FSB*, 958 F.2d 15, 18 (1st Cir. 1992) (same). "Conversion of a motion for judgment on the pleadings into one for summary judgment should only occur after the parties have been offered a 'reasonable opportunity' to present pertinent summary judgment materials." *Rubert-Torres v. Hosp. San Pablo, Inc.*, 205 F.3d 472, 475 (1st Cir. 2000), citing Fed. R. Civ. P. 12(c). The First Circuit discourages conversion when "(1) the motion comes quickly after the complaint was filed, (2) discovery is in its infancy and the nonmovant is limited in obtaining and submitting evidence to counter the motion, or (3) the nonmovant does not have reasonable notice that a conversion might occur." *Id.*

---

[1] Although First Student challenges plaintiffs' description of the negotiation of the Danvers contract, the court must accept all well-pleaded facts in the plaintiffs' complaint as true. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

First Student objects to any conversion as premature, and also notes that plaintiffs have failed to comply with Local Rule 56.1.[2] Because the objections are sound, the court will decline the plaintiffs' motion to convert.

To survive a motion to dismiss, a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007), disavowing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal citations and quotation marks omitted). *See also Rodriguez-Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 95 (1st Cir. 2007). Dismissal for failure to state a claim will be appropriate if the pleadings fail to set forth "'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir. 1997), quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988). In deciding a Rule 12(b)(6) motion, the court may also look to documents, the authenticity of which are not

---

[2] The Local Rule requires that motions for summary judgment "include a concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried, with page references to affidavits, depositions and other documentation. Failure to include such a statement constitutes grounds for denial of the action." L.R. 56.1. Plaintiffs did not file a statement of material facts.

disputed by the parties, to documents central to the plaintiffs' claims, and to documents referenced in the complaint. *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).

### *Count I - Violation of the PWS*

The PWS requires that the DOS prevailing wage schedule "shall be made a part of the contract" and "shall continue to be the minimum rate or rates of wages during the life of the contract." Mass. Gen. Laws ch. 71, § 7A. Although plaintiffs allege that First Student intentionally failed to pay the DOS-mandated prevailing wage, Sec. Am. Compl. ¶ 66, plaintiffs now concede that "First Student has not violated the technical language of M.G.L. ch. 71, § 7A."[3] Pls.' Opp'n Mem. at 16 n.9. In light of this concession, Count I of the Second Amended Complaint will be dismissed.

### *Count III - Failure to Pay Correct Overtime Wages*

First Student moves to dismiss Count III on Rule 12(b)(6) grounds – failure to state a claim upon which relief may be granted – because plaintiffs do not contend that drivers were not paid the legally mandated time and a half rate for overtime. Rather, the claim is predicated on the assumption that overtime was improperly under-calculated because of the section 7A violation. As there was no section 7A violation, Count III

---

[3] Plaintiffs insist that First Student nonetheless violated the spirit of the law. The statute, however, does not mandate compliance with its "spirit," only its legal requirements.

will also be dismissed.[4]

### *Count V - Breach of Contract*

Under their amended theory of liability, plaintiffs (and on behalf of the putative class) claim to be the intended third party beneficiaries of the municipal contracts entered with First Student, and by extension, the third party beneficiaries of the contracts' implied covenants of good faith and fair dealing.[5] Pls.' Opp'n Mem. at 17. It is true that in Massachusetts, every contract, to some extent, is subject to an implied covenant of good faith and fair dealing. *684 Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 473 (1991). "The covenant may not, however, be invoked to create rights and duties not otherwise provided for in the existing contractual relationship . .

---

[4] Plaintiffs properly do not object to a dismissal of this claim.

[5] Plaintiffs' status as third-party beneficiaries of the contract is by no means a given. "'[W]hen one person, for a valuable consideration, engages with another, by simple contract, to do some act for the benefit of a third, the latter, who would enjoy the benefit of the act, may maintain an action for the breach of such engagement.'" *Rae v. Air-Speed, Inc.*, 386 Mass. 187, 195 (1982), quoting *Brewer v. Dyer*, 61 Mass. 337, 339 (1851). To recover as a third party beneficiary, a plaintiff must show that she was the intended beneficiary of the contract, not merely an incidental one. *See Spinner v. Nutt*, 417 Mass. 549, 555 (1994); *Macksey v. Egan*, 36 Mass. App. Ct. 463, 469 (1994). "Because third-party beneficiary status constitutes an exception to the general rule that a contract does not grant enforceable rights to nonsignatories, . . . a person aspiring to such status must show with special clarity that the contracting parties intended to confer a benefit on him." *McCarthy v. Azure*, 22 F.3d 351, 362 (1st Cir. 1994). Nothing in the contracts at issue appears to speak with the clarity that the law requires on the subject.

. ." *Uno Restaurants, Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004). Therefore, the scope of the covenant is construed only as broadly as the contract itself. *Ayash v. Dana-Farber Cancer Inst.*, 443 Mass. 367, 385 (2005).

First Student argues that its transportation services contracts with MASCO and Peabody do not impose any obligation that it act as the guarantor of the districts' obligations under the PWS, by – as the plaintiffs would have it – giving the municipal authorities legal advice on their statutory obligations. Plaintiffs point to no language in either of the contracts that imposes such a duty on First Student for a good reason. The statutory duty is non-delegable, as the Legislature has placed the burden of compliance squarely on the shoulders of the school district: "[T]he school committee . . . *shall* request the [DOS] to determine the rate of wages to be paid to each person to be employed by the bidder under said contract . . . ." Mass. Gen. Laws. ch. 71 § 7A (emphasis added). Plaintiffs themselves inferentially concede the argument in the Second Amended Complaint, which alleges that "[p]rior to awarding a contract for school bus transportation services, the [awarding authority] must contact the [DOS] and obtain from it the prevailing wage rages applicable to the contract being put out to bid . . . ." Sec. Am. Compl. ¶ 20. *Cf. Tomei v. Corix Utils. (U.S.) Inc.*, 2009 WL 2982775, *12 (D. Mass. 2009) ("[W]here a municipality fails ever to request a prevailing wage rate schedule from the [DOS], or the [DOS] fails to furnish such a

schedule, there is no duty on a private employer to solicit or otherwise establish prevailing wage rates on its own.").

If First Student had some special knowledge of the issue, and if it was in fact aware that the districts were ignorant of their continuing duty to update the DOS schedule, it would have been a gracious gesture to its employees to sua sponte raise the issue with the districts, but in the employment context, "[t]here is no general duty on the part of an employer to act 'nicely.'" *Ayash*, 443 Mass. at 385.[6] Because plaintiffs cannot point to any provision of the law or the contracts that imposes a duty on First Student to advise municipal authorities of their statutory duties, Count V will be dismissed for failure to state a claim.

### *Count IV - Breach of Fiduciary Duty*

Plaintiffs further claim that First Student's intentional failure to inform MASCO and Peabody of their alleged duty to request updated prevailing wages constituted a breach of First Student's fiduciary duty to plaintiffs and the members of the putative

---

[6] The case law on which plaintiffs rely is inapposite because no employees have been terminated to wrongfully deprive them of compensation fairly earned. First Student is correct to emphasize that in the employment context, Massachusetts courts have limited the availability of the implied covenant remedy to instances in which an employee is terminated contrary to "well-defined" public policy or terminated in bad faith as a means of depriving an employee of earned wages, bonuses, or commissions (in violation of the implied covenant of good faith and fair dealing). *See Wright v. Shriners Hosp. for Crippled Children*, 412 Mass. 469, 477 n.1 (1992).

class. Under Massachusetts law, "the question of whether one party owes fiduciary duties to another is a question of fact." *McAdams v. Massachusetts Mut. Life Ins. Co.*, 391 F.3d 287, 303 (1st Cir. 2004). However, the court need not decide whether there is a disputed issue of fact regarding the existence of a fiduciary duty (or whether there is a cognizable fiduciary relationship at all) where, as here, there was no breach of an existing duty (as discussed above).[7] *Id.* First Student's motion to dismiss Count IV under Rule 12(b)(6) will therefore be allowed.

*Count VII - Accounting*

Plaintiffs seek an equitable accounting of "the amount of compensation due." Sec. Am. Compl. ¶ 105. Under Massachusetts law, the existence of a fiduciary relationship is a prerequisite for an equitable accounting claim. *Chedd-Angier Prod. Co., Inc. v. Omni Publ'ns Int'l, Ltd.*, 756 F.2d 930, 937 (1st Cir.1985), citing *Ball v. Harrison*, 314 Mass. 390 (1943). Where the claims asserted are legal in nature and a duty to account does not arise as an equitable matter, a cause of action for an accounting lies only where the accounts of the parties are "of such a 'complicated nature' that only

---

[7] First Student further argues, and plaintiffs concede, that as a general rule, the employer-employee relationship does give rise to fiduciary duties. *See, e.g., JSB Indus., Inc. v. Nexus Payroll Servs., Inc.*, 463 F. Supp. 2d 103, 107-108 (D. Mass. 2006) (a business relationship does not, in and of itself, create a fiduciary relationship requiring disclosure) ; *Sbrogna v. Worcester Stamped Metal Co.*, 354 Mass. 17, 20 (1968) ("The [parties] were employees and employer. The relationship was strictly one of business having no fiduciary attributes.").

11

a court of equity can satisfactorily unravel them." *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962) (citation omitted). Plaintiffs concede the point and do not oppose First Student's motion to dismiss Count VII.

### *Count II - Failure to Pay Correct Wages on a Weekly or Bi-Weekly Basis*

Plaintiffs claim that as a result of breaching the implied covenant of good faith and fair dealing (as well as its fiduciary duty) by concealing information from MASCO and Peabody about the applicability of the PWS, the wages paid to the plaintiffs in option year 2009-2010 were less than what the plaintiffs and the putative class actually earned. First Student correctly notes that this claim is derivative of the legally-deficient claim of the breach of the implied covenant of good faith and fair dealing (and/or breach of fiduciary duty). Consequently, the court will allow First Student's motion to dismiss Count II.

### *Count VI - Unjust Enrichment*

Plaintiffs allege that First Student was unjustly enriched through its intentional failure to disclose its awareness of the legal duty of municipalities to update the public wage rate schedule for the option years of the contracts at issue. The First Circuit characterizes unjust enrichment as an "equitable stopgap for occasional inadequacies in contractual remedies at law." *Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 234 (1st Cir. 2005) (clarified after remand). To

establish a claim of unjust enrichment, a plaintiff must show: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment for its value." *Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 57 (1st Cir. 2009) (internal quotation marks and citation omitted).

In this case, the first two elements are not in material dispute. However, at this stage of the litigation, it is impossible for the court to make a determination of whether First Student, as a matter of fact, knew of the districts' obligation to update the prevailing wage mandated in the transportation services contracts, and if so, whether the expense would have been borne by the districts themselves or by First Student. If the latter, it follows that First Student may be found to have retained a benefit that rightly belonged to the plaintiffs. The court will deny the motion to dismiss Count VI and will authorize discovery on these two specific issues.[8]

ORDER

For the foregoing reasons, the motion to dismiss Counts I, II, III, IV, V, and VII is <u>ALLOWED</u>. The motion to dismiss Count VI is <u>DENIED</u>. The parties will within

---

[8] For reasons of judicial economy, the court will not consider class certification issues unless plaintiffs, through discovery, are able to show the elements of a viable unjust enrichment claim.

twenty-one (21) days of the date of this Order file a joint proposed scheduling order to govern the discovery authorized by this decision.

                                        SO ORDERED.

                                        /s/ Richard G. Stearns

                                        _____
                                        UNITED STATES DISTRICT JUDGE